UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUXOTTICA GROUP S.p.A., an Italian corporation; and OAKLEY, INC., a Washington corporation,<br><br>     Plaintiffs,<br><br> -vs-<br><br>SHUNDA INTERNATIONAL, INC., a New York Corporation; and DOES 1-10, inclusive,<br><br>     Defendants. | Civil Action No. 1:16-cv-3778<br><br>**PLAINTIFFS' COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

  **Plaintiffs Luxottica Group S.p.A. and Oakley, Inc.** for their claims against **Defendants Shunda International, Inc. and DOES 1-10**, inclusive, (collectively "Defendants") respectfully allege as follows:

<u>**NATURE OF THE ACTION**</u>

  1.  This is an action to combat Defendants' importation and sale of counterfeit products that infringe federally-registered trademarks owned and used by Plaintiffs in connection with the sale of Plaintiffs' famous Ray-Ban® and Oakley® sun eyewear.  As a direct and proximate result of Defendants' unlawful importation, distribution and sale of counterfeit Ray-Ban® and Oakley® sun eyewear, Plaintiffs have been irreparably harmed.  Plaintiffs seek permanent

injunctive relief, damages, costs and attorney's fees as authorized by the Lanham Act, the Tariff Act, and New York State statutory and common law.

## JURISDICTION AND VENUE

2.      Plaintiffs file this action against Defendants for trademark counterfeiting, trademark infringement, illegal importation of counterfeit goods under the Lanham Act, 15 U.S.C. §1051 *et seq*., illegal importation of counterfeit goods under the Tariff Act, 19 U.S.C. § 1526(a), and related claims of unfair competition under the statutory and common law of the state of New York.  This Court has subject matter jurisdiction over the trademark infringement claims under 28 U.S.C. §§1331 and 1338(a).

3.      This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

4.      This Court has personal jurisdiction over Defendants because Defendants reside and/or do business in this judicial district.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because the claims asserted arise in this district and Defendants are located in this judicial district.

## THE PARTIES

6.      Plaintiff Luxottica Group S.p.A. ("Luxottica Group") is a corporation organized and existing under the laws of Italy, with its principal place of business in Milan, Italy and an office in Port Washington, New York.  Luxottica Group in the parent corporation of plaintiff Oakley, Inc.

7.      Plaintiff Oakley, Inc. ("Oakley") is a corporation organized and existing under the laws of the State of Washington with an office and principal place of business in Foothill Ranch, California.  Oakley is an indirect wholly-owned subsidiary of plaintiff Luxottica Group.

8.      Defendant Shunda International, Inc. ("Shunda") is a corporation organized and existing under the laws of the state of New York with its principal place of business located at 133-14 41st Road, Unit 1FL, Flushing, New York 11355.

9.      Plaintiffs are unaware of the names and true capacities of DOES 1 through 10, inclusive, and therefore sues them by their fictitious names.  Plaintiffs will seek leave to amend this Complaint when their true names and capacities are ascertained.  Plaintiffs are informed and believe, and based thereon allege, that said DOES 1 through 10, inclusive, are in some manner responsible for the wrongs alleged herein and, that at all times referenced, each was the agent and servant of

the other Defendants and was acting within the course and scope of said agency and employment.

10.     Plaintiffs are informed and believe, and based thereon allege, that at all relevant times herein, Defendants and DOES 1 through 10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior.  Plaintiffs further allege that Defendants and DOES 1 through 10, inclusive, have a non-delegable duty to prevent such acts and the behavior described herein, which duty Defendants and DOES 1 through 10, inclusive, failed and/or refused to perform.

## ALLEGATIONS COMMON TO ALL CLAIMS

**A.    The World Famous Luxottica Brands and Products.**

11.     Luxottica Group is engaged in the manufacture, marketing and sale of premium, luxury and sports eyewear throughout the world.  Luxottica Group's proprietary brands include Ray-Ban, the world's most famous sun eyewear brand, as well as Vogue Eyewear, Persol, Oliver Peoples, Alain Mikli, and Arnette.

12.     Through its affiliates and subsidiaries, Luxottica Group operates over 7,000 optical and sun retail stores, including LensCrafters, Pearle Vision and ILORI in North America, OPSM and Laubman & Pank in Asia-Pacific, LensCrafters in China, GMO in Latin America and Sunglass Hut worldwide.

13.    Luxottica Group's Ray-Ban products are distributed and sold through its optical and sun specialty retail stores, authorized retail and department stores, and via its internet websites, including www.ray-ban.com, throughout the United States, including New York.

14.    Luxottica Group has used a variety of legally-protected trademarks for many years on and in connection with the advertisement and sale of its Ray-Ban products, including, but not limited to, those detailed in this Complaint (collectively, the "Ray-Ban Marks").

15.    Luxottica Group has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Ray-Ban Marks. As a result, products bearing the Ray-Ban Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Luxottica Group, and have acquired strong secondary meaning.

16.    Luxottica Group is the owner of the following United States Federal Trademark Registrations corresponding to the Ray-Ban Marks discussed herein:

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 650,499 | *Ray·Ban* | FOR: SUNGLASSES, SHOOTING GLASSES, AND OPHTHALMIC LENSES, IN CLASS 26. |

| | | |
|---|---|---|
| 1,080,886 | **RAY-BAN** | FOR: OPHTHALMIC PRODUCTS AND ACCESSORIES – NAMELY, SUNGLASSES; EYEGLASSES; SPECTACLES; LENSES AND FRAMES FOR SUNGLASSES, EYEGLASSES, SPECTACLES – IN CLASS 9. |
| 1,093.658 | *Ray-Ban* | FOR: OPHTHALMIC PRODUCTS AND ACCESSORIES – NAMELY, SUNGLASSES; EYEGLASSES; SPECTACLES; LENSES AND FRAMES FOR SUNGLASSES, EYEGLASSES, SPECTACLES AND GOGGLES; AND CASES AND OTHER PROTECTIVE COVERS FOR SUNGLASSES, EYEGLASSES, SPECTACLES– IN CLASS 9. |
| 1,320,460 | *Ray-Ban* | FOR: SUNGLASSES AND CARRYING CASES THEREFOR, IN CLASS 9. |
| 1,490,305 | **RAY-BAN** | FOR: CLOTHING, NAMELY, T-SHIRTS, IN CLASS 25. |
| 1,726,955 | *Ray-Ban* | FOR: FOR: BAGS; NAMELY, TOTE, DUFFLE AND ALL PURPOSE SPORTS BAGS, IN CLASS 18. FOR: CLOTHS FOR CLEANING OPTHALMIC PRODUCTS, IN CLASS 21. FOR: CLOTHING AND HEADGEAR; NAMELY, HATS, IN CLASS 25. |

| 2,718,485 | **RAY-BAN** | FOR: GOODS MADE OF LEATHER AND IMITATION LEATHER, NAMELY, WALLETS, CARD CASES FOR BUSINESS CARDS, CALLING CARDS, NAME CARDS AND CREDIT CARDS, IN CLASS 18. FOR: CLOTHING FOR MEN AND WOMEN, NAMELY, POLO SHIRTS; HEADGEAR, NAMELY, BERETS AND CAPS. |
| 3,522,603 | *Ray-Ban* | FOR: SUNGLASSES, EYEGLASSES, LENSES FOR EYEGLASSES, EYEGLASSES FRAMES, CASES FOR EYEGLASSES, IN CLASS 9. |

17.     Luxottica Group has long been manufacturing and selling in interstate commerce eyewear under the Ray-Ban Marks.[1]  The foregoing registrations are valid and subsisting, and the majority are incontestable pursuant to 15 U.S.C. § 1065.

18.     The registration of the marks constitutes *prima facie* evidence of their validity and conclusive evidence of Luxottica Group's exclusive right to use the Ray-Ban Marks in connection with the goods identified therein and other commercial goods.

---

[1] All registrations originally held in the name of Bausch and Lomb, Inc. have been assigned in full to Luxottica Group.

**COMPLAINT FOR DAMAGES**

19.     The registration of the marks also provides constructive notice to Defendants of Luxottica Group's ownership and exclusive rights in the Ray-Ban Marks.

20.     The Ray-Ban Marks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

21.     The Ray-Ban Marks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

**B.     The World Famous Oakley Brand and Products.**

22.     Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other related merchandise.

23.     Oakley products are distributed and sold to consumers through its own Oakley O stores, its affiliate's sun retail stores, authorized retailers, and via its internet website: www.oakley.com throughout the United States, including New York.

24.     Oakley has used a variety of legally-protected trademarks for many years on and in connection with the advertisement and sale of its Oakley products, including but not limited to, those detailed in this Complaint (collectively, the "Oakley Marks").

25.     Oakley has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Oakley Marks.  As a result, products bearing the Oakley Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Oakley, and have acquired strong secondary meaning.

26.     Oakley is the owner of the following United States Federal Trademark Registrations corresponding to the Oakley Marks discussed herein:

| Registration Number | Trademark | Goods and Services |
| --- | --- | --- |
| 1,521,599 | OAKLEY | 9 SUNGLASSES AND ACCESSORIES FOR SUNGLASSES, NAMELY, REPLACEMENT LENSES, EAR STEMS AND NOSE PIECES. |
| 1,908,414 | OAKLEY | 16 PRINTED MATERIAL, NAMELY DECALS AND STICKERS. |
| 1,980,039 | OAKLEY | 9, 25  PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY SUNGLASSES, GOGGLES, SPECTACLES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, EARSTEMS, FRAMES, NOSE PIECES AND FOAM STRIPS; CASES SPECIALLY ADAPTED FOR PROTECTIVE AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES CLOTHING, HEADWEAR AND FOOTWEAR, NAMELY T-SHIRTS, SWEATSHIRTS, BLOUSES, SWEATERS, SPORT SHIRTS, JERSEYS, SHORTS, TROUSERS, |

9

COMPLAINT FOR DAMAGES

| | | |
|---|---|---|
| | | PANTS, SWEATPANTS, SKI PANTS, RACING PANTS, JEANS, COATS, VESTS, JACKETS, SWIMWEAR, HATS, VISORS, CAPS, GLOVES, BELTS, SOCKS, SANDALS AND SHOES. |
| 1,356,297 | **OAKLEY** | 9, 25 GOGGLES, SUNGLASSES, PROTECTIVE PADS FOR ELBOWS, FEET AND KNEES.  CLOTHING - NAMELY T-SHIRTS; GLOVES; RACING PANTS; HATS; SWEATSHIRTS; SPORT SHIRTS, JACKETS, JEANS, JERSEYS AND SKI PANTS, JACKETS, HATS, GLOVES AND SOCKS. |
| 1,519,596 | **OAKLEY** | 9 SUNGLASSES AND ACCESSORIES FOR SUNGLASSES, NAMELY, REPLACEMENT LENSES, EAR STEMS AND NOSE PIECES. |
| 1,902,660 | OAKLEY | 16 PRINTED MATERIAL, NAMELY DECALS AND STICKERS. |
| 1,990,262 | OAKLEY | 9, 25 PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY SUNGLASSES, GOGGLES, SPECTACLES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, EARSTEMS, FRAMES, NOSE PIECES AND FOAM STRIPS; CASES SPECIALLY ADAPTED FOR PROTECTIVE AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES CLOTHING, HEADWEAR AND FOOTWEAR, NAMELY T-SHIRTS, SWEATSHIRTS, BLOUSES, SWEATERS, SPORT SHIRTS, JERSEYS, SWEATPANTS, SKI PANTS, RACING PANTS, JEANS, |

| | | |
|---|---|---|
| | | COATS, VESTS, JACKETS, HATS, VISORS, CAPS |
| 3,151,994 |  | 9 PROTECTIVE EYEWEAR, NAMELY SPECTACLES, PRESCRIPTION EYEWEAR, ANTI GLARE GLASSES AND SUNGLASSES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, FRAMES, EARSTEMS, AND NOSE PIECES; CASES SPECIALLY ADAPTED FOR SPECTACLES AND SUNGLASSES AND THEIR PARTS AND ACCESSORIES |
| 3,785,868 |  | 9 PROTECTIVE EYEWEAR, NAMELY, SPECTACLES, PRESCRIPTION EYEWEAR, ANTI GLARE GLASSES AND SUNGLASSES AND THEIR PARTS AND ACCESSORIES, NAMELY, REPLACEMENT LENSES, FRAMES, EARSTEMS, AND NOSE PIECES; CASES SPECIALLY ADAPTED FOR SPECTACLES AND SUNGLASSES AND THEIR PARTS AND ACCESSORIES |
| 2,209,416 |  | 9, 25 PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY, GOGGLES, AND THEIR PARTS AND ACCESSORIES, NAMELY, CASES SPECIALLY ADAPTED FOR PROTECTIVE AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES; CLOTHING, HEADWEAR AND FOOTWEAR, NAMELY, T-SHIRTS, HATS, SHORTS, SHIRTS, PANTS, JACKETS, SWEATSHIRTS, SHOES, AND PULLOVERS |

11
**COMPLAINT FOR DAMAGES**

| 1,927,106 | | 16 PRINTED MATERIAL, NAMELY DECALS AND STICKERS |
|---|---|---|
| 1,984,501 | | 9, 25 PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY SUNGLASSES, GOGGLES, SPECTACLES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, EARSTEMS, FRAMES, NOSE PIECES AND FOAM STRIPS; CASES SPECIALLY ADAPTED FOR PROTECTIVE AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES; CLOTHING AND HEADWEAR, NAMELY T-SHIRTS, SWEATSHIRTS, JACKETS, HATS, AND CAPS |
| 1,904,181 | | 9 PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY SUNGLASSES, GOGGLES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, EARSTEMS, FRAMES, NOSE PIECES AND FOAM STRIPS, CASES SPECIALLY ADAPTED FOR PROTECTIVE AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES |

27.    Oakley has long been manufacturing and selling in interstate commerce eyewear under the Oakley Marks.  These registrations are valid and subsisting and the majority are incontestable.

28.     The registration of the marks constitutes *prima facie* evidence of their validity and conclusive evidence of Oakley's exclusive right to use the Oakley Marks in connection with the goods identified therein and other commercial goods.

29.     The registration of the marks also provides constructive notice to Defendants of Oakley's ownership and exclusive rights in the Oakley Marks.

30.     The Oakley Marks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

31.     The Oakley Marks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

### C.     Defendants' Infringing Activities

32.     The United States Bureau of Customs & Border Protection ("CBP") periodically inspects a fraction of the merchandise imported into the United States. As a result of one such inspection on or about April 26, 2014, CBP discovered that a shipment imported into the United States contained a commercial quantity of sun eyewear bearing spurious marks that were counterfeit versions of least one of the Ray-Ban Marks, *i.e.*, U.S. Registration No. 1,093,658.  A true and correct copy of U.S. Registration No. 1,093,658 is attached hereto as Exhibit A.

33.     Plaintiffs filed and recorded a copy of the registration certificate of U.S. Registration No. 1,093,658 with CBP in accordance with Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a), and Section 42 of the Lanham Act, 15 U.S.C.

§ 1124.  Once filed with CBP, U.S. Registration No. 1,093,658 was recorded by CBP under the Recordation Number TMK 02-00976.  A true and correct copy of the computer printout documenting CBP's recordation of this trademark is attached hereto as Exhibit B.

34.     On or about August 28, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014477200127501/MC/sh) ("First Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Ray-Ban sun eyewear on April 26, 2014.  The First Notice of Seizure names "Jerry Jin," located at "133-14 41st Road Unit 1FL FLSHINGI Flushing, NY 11354," as the party that imported 240 pairs of counterfeit "Ray-ban Sunglasses."  A true and correct copy of the First Notice of Seizure is attached hereto as Exhibit C.

35.     Upon information and belief, "Jerry Jin" is an alias for a JOHN DOE employee of Shunda who arranged to have the counterfeit Ray-Ban sun eyewear delivered to him or her at Shunda's address.  When Plaintiffs discovery the true identity of "Jerry Jin," Plaintiffs will amend this Complaint to name him or her as a defendant.

36.     On or about May 13, 2014, CBP discovered that another shipment imported into the United States contained a commercial quantity of sun eyewear bearing spurious marks that were counterfeit versions of least one of the Ray-Ban Marks, *i.e.*, U.S. Registration No. 1,093,658.

37.     On or about July 19, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014477200105101/MC/BP) ("Second Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Ray-Ban sun eyewear on May 13, 2014.  The Second Notice of Seizure names "Jerry Jin," located at "133 14 41st Road Unit 1 FL Flshing 1 Flushing, NY 11354," as the party that imported 240 pairs of "Counterfeit Ray Ban Sunglasses." A true and correct copy of the Second Notice of Seizure is attached hereto as Exhibit D.

38.     On or about May 13, 2014, CBP discovered that another shipment imported into the United States contained a commercial quantity of sun eyewear bearing spurious marks that were counterfeit versions of least one of the Ray-Ban Marks, *i.e.*, U.S. Registration No. 1,093,658.

39.     On or about July 19, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014477200105001/MC/BP) ("Third Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Ray-Ban sun eyewear on May 13, 2014.  The Third Notice of Seizure names "Jerry Jin," located at "133 14 41st Road Unit 1 FL Flshing 1 Flushing, NY 11354," as the party that imported 240 pairs of "Counterfeit Ray Ban Sunglasses."  A true and correct copy of the Third Notice of Seizure is attached hereto as Exhibit E.

40.     On or about May 30, 2014, CBP discovered that another shipment imported into the United States contained a commercial quantity of sun eyewear bearing spurious marks that were counterfeit versions of least one of the Ray-Ban Marks, *i.e.*, U.S. Registration No. 1,093,658.

41.     On or about July 30, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014-4772-001261-01 CD) ("Fourth Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Ray-Ban sun eyewear on May 30, 2014.  The Fourth Notice of Seizure names "Jerry Jin," located at "133-14 41st Road Unit 1st FL Flushing, NY 11354," as the party that imported 240 pairs of counterfeit "sunglasses bearing the 'Ray Ban' word mark."  A true and correct copy of the Fourth Notice of Seizure is attached hereto as Exhibit F.

42.     On or about May 30, 2014, CBP discovered that a shipment imported into the United States contained a commercial quantity of sun eyewear bearing spurious marks that were counterfeit versions of least one of the Oakley Marks, *i.e.*, U.S. Registration No. 1,980,039.  A true and correct copy of U.S. Registration No. 1,980,039 is attached hereto as Exhibit G.

43.     Plaintiffs filed and recorded a copy of the registration certificate of U.S. Registration No. 1,980,039 with CBP in accordance with Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a), and Section 42 of the Lanham Act, 15 U.S.C.

§ 1124.  Once filed with CBP, U.S. Registration No. 1,980,039 was recorded by CBP under the Recordation Number TMK 13-00858.  A true and correct copy of the computer printout documenting CBP's recordation of this trademark is attached hereto as Exhibit H.

44.     On or about July 30, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014-4772-001261-01 CD) ("Fifth Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Oakley sun eyewear on May 30, 2014.  The Fifth Notice of Seizure names "Jerry Jin," located at "133-14 41st Road Unit 1st FL Flushing, NY 11354," as the party that imported 240 pairs of "counterfeit sunglasses bearing the 'Oakley' word mark." A true and correct copy of the Fifth Notice of Seizure is attached hereto as Exhibit I.

45.     On or about May 30, 2014, CBP discovered that another shipment imported into the United States contained a commercial quantity of sun eyewear bearing spurious marks that were counterfeit versions of least one of the Oakley Marks, *i.e.*, U.S. Registration No. 1,980,039.

46.     On or about July 30, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014-4772-001266-01 CD) ("Sixth Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Oakley sun eyewear on May 30, 2014.  The Sixth Notice of Seizure names "Jerry Jin,"

located at "133-14 41st Road Unit 1st FL Flushing, NY 11354," as the party that imported 240 pairs of "counterfeit sunglasses bearing the 'Oakley' word mark." A true and correct copy of the Sixth Notice of Seizure is attached hereto as Exhibit J.

47.     On or about June 2, 2014, CBP discovered that another shipment imported into the United States contained a commercial quantity of sun eyewear bearing spurious marks that were counterfeit versions of least one of the Ray-Ban Marks, *i.e.*, U.S. Registration No. 1,093,658.

48.     On or about July 31, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014-4772-001271-01 CD) ("Seventh Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Ray-Ban sun eyewear on June 2, 2014.  The Seventh Notice of Seizure names "Jerry Jin," located at "133-14 41st Road Unit 1st Fl. Flushing, NY 11354," as the party that imported 480 pairs of "counterfeit 'RAY-BAN' Sunglasses."  A true and correct copy of the Seventh Notice of Seizure is attached hereto as Exhibit K.

49.     On or about June 5, 2014, CBP discovered that another shipment imported into the United States contained a commercial quantity of sun eyewear bearing spurious marks that were counterfeit versions of least one of the Ray-Ban Marks, *i.e.*, U.S. Registration No. 1,093,658.

50.     On or about August 1, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014-4772-001338-01 CD) ("Eighth Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Ray-Ban sun eyewear on June 5, 2014.  The Eighth Notice of Seizure names "Jerry Jin," located at "133-14 41st Road Unit 1st Fl. Flushing, NY 11354," as the party that imported 480 pairs of "counterfeit 'RAY-BAN' Sunglasses."  A true and correct copy of the Eighth Notice of Seizure is attached hereto as Exhibit L.

51.     On or about June 5, 2014, CBP discovered that another shipment imported into the United States contained a commercial quantity of sun eyewear bearing spurious marks that were counterfeit versions of least one of the Ray-Ban Marks, *i.e.*, U.S. Registration No. 1,093,658.

52.     On or about August 1, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014-4772-001337-01 CD) ("Ninth Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Ray-Ban sun eyewear on June 5, 2014.  The Ninth Notice of Seizure names "Jerry Jin," located at "133-14 41st Road Unit 1st Fl. Flushing, NY 11354," as the party that imported 480 pairs of "counterfeit 'RAY-BAN' Sunglasses."  A true and correct copy of the Ninth Notice of Seizure is attached hereto as Exhibit M.

53.     On or about June 5, 2014, CBP discovered that another shipment imported into the United States contained a commercial quantity of sun eyewear

bearing spurious marks that were counterfeit versions of least one of the Ray-Ban Marks, *i.e.*, U.S. Registration No. 1,093,658.

54.     On or about August 1, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014-4772-001335-01 CD) ("Tenth Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Ray-Ban sun eyewear on June 5, 2014.  The Tenth Notice of Seizure names "Jerry Jin," located at "133-14 41st Road Unit 1st Fl. Flushing, NY 11354," as the party that imported 240 pairs of "counterfeit 'RAY-BAN' Sunglasses."  A true and correct copy of the Tenth Notice of Seizure is attached hereto as Exhibit N.

55.     On or about June 5, 2014, CBP discovered that another shipment imported into the United States contained a commercial quantity of sun eyewear bearing spurious marks that were counterfeit versions of least one of the Ray-Ban Marks, *i.e.*, U.S. Registration No. 1,093,658.

56.     On or about August 1, 2014, CBP mailed to Plaintiffs a Notice of Seizure of Infringing Merchandise (No. 2014-4772-001336-01 CD) ("Eleventh Notice of Seizure") notifying Plaintiffs that CBP had seized the above counterfeit Ray-Ban sun eyewear on June 5, 2014.  The Eleventh Notice of Seizure names "Jerry Jin," located at "133-14 41st Road Unit 1st Fl. Flushing, NY 11354," as the party that imported 488 pairs of "counterfeit 'RAY-BAN' Sunglasses."  A true and correct copy of the Eleventh Notice of Seizure is attached hereto as Exhibit O.

57.    The sun eyewear referenced in the First through Eleventh Notices of Seizure are all counterfeit, and not genuine articles manufactured by or with the permission of Luxottica Group or Oakley.

58.    Defendants have never had any license, authority, or other permission from Luxottica Group to use any of the Ray-Ban Marks in connection with their importation, sale, offering for sale, or distribution of Ray-Ban sun eyewear.

59.    Defendants have never had any license, authority, or other permission from Oakley to use any of the Oakley Marks in connection with their importation, sale, offering for sale, or distribution of Oakley sun eyewear.

60.    Upon information and belief, Defendants are engaged in and/or otherwise involved in facilitating the ongoing and unrestrained commercial importation of counterfeit Ray-Ban and Oakley sun eyewear into the United States.

61.    The forgoing acts of Defendants constitute direct trademark infringement in violation of federal law and New York State law.

62.    The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that counterfeit Ray-Ban and Oakley products imported, offered for sale, and sold by Defendants are authentic or authorized products of Luxottica Group or Oakley.

63.    The activities of Defendants, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the counterfeit Ray-Ban products and Luxottica Group, and that there is a connection or association between the counterfeit Oakley products and Oakley.  Defendants are well aware of the extraordinary fame and strength of the Ray-Ban Marks and the Oakley Marks, as well as the incalculable goodwill associated therewith.

64.    Defendants' knowing and deliberate counterfeiting of Plaintiffs' famous Ray-Ban Marks and Oakley Marks has caused and, unless restrained and enjoined, will continue to cause, substantial and irreparable harm to Luxottica Group's and Oakley's goodwill and reputation.

65.    The harm being caused to Luxottica Group and Oakley is irreparable and Plaintiffs do not have an adequate remedy at law.  Plaintiffs therefore seek the entry of a permanent injunction preventing Defendants' importation, sale, offering for sale, and distribution of counterfeit Ray-Ban and Oakley products.  Plaintiffs also seek damages, including exemplary damages and attorneys' fees, as a result of Defendants' knowing, deliberate and willful disregard of the activities infringing Plaintiffs' trademarks.

## FIRST CLAIM FOR RELIEF

**(For Infringement of Registered Trademarks in Violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))**

66.    Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 65 hereof.

67.    The Ray-Ban Marks are recognized internationally and domestically, including within this judicial district, as being affixed to goods and merchandise of the highest quality and as originating from Luxottica Group.

68.    The Oakley Marks are recognized internationally and domestically, including within this judicial district, as being affixed to goods and merchandise of the highest quality and as originating from Oakley.

69.    The acts of the Defendants alleged herein constitute the use in commerce, without the consent of Plaintiffs, of a reproduction, counterfeit, copy, or colorable imitation of one or more of the Ray-Ban Marks and one or more of the Oakley Marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe Plaintiffs' rights in one or more of the Ray-Ban Marks and Oakley Marks, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

70.     The Defendants' use of the infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

71.     Defendants' use of the Ray-Ban Marks and Oakley Marks is without Plaintiffs' permission or authority and in total disregard of Plaintiffs' rights to control their trademarks.

72.     Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiffs have produced, sponsored, authorized, licensed or are otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Plaintiffs.

73.     The Defendants' acts entitle Plaintiffs to damages for all of the Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

74.     Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct.  Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by the Defendants' actions.

## SECOND CLAIM FOR RELIEF

**(For False Designation of Origin and Trademark and Trade Dress**

**Infringement in Violation of Section 43(a)(1)(A) of the Lanham Act,**

**15 U.S.C. § 1125(a)(1)(A))**

75.     Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 74 hereof.

76.     The acts of the Defendants alleged herein constitute the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, in connection with the sale, or offering for sale, of goods in violation of section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  These acts of the Defendants are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' counterfeit sun eyewear by Plaintiffs.

77.     Defendants' use of the Ray-Ban Marks and Oakley Marks is without Plaintiffs' permission or authority and in total disregard of Plaintiffs' rights to control their trademarks.

78.     Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiffs have produced, sponsored, authorized, licensed or are otherwise connected or

affiliated with Defendants' commercial and business activities, all to the detriment of Plaintiffs.

79.     Defendants' use of infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

80.     Defendants' acts entitle Plaintiffs to damages for all of the Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

81.     Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct.  Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by the Defendants' actions.

<u>**THIRD CLAIM FOR RELIEF**</u>

**(For Unlawful Importation of Goods Bearing Infringing Marks in Violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124)**

82.     Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 81 hereof.

83.     Defendants' acts alleged herein constitute the importation of merchandise which bears copies or simulations of the federally registered Ray-Ban

Marks and Oakley Marks in violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124.

84.     Defendants' use of the infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

85.     Defendants' acts entitle Plaintiffs to damages for all of the Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

86.     Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct.  Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## FOURTH CLAIM FOR RELIEF

### (For Unlawful Importation of Goods Bearing Registered United States Trademarks in Violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a))

87.     Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 86 hereof.

88.     Defendants' acts alleged herein constitute the importation of merchandise which bears imitations of the Ray-Ban Marks and Oakley Marks in violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a).

89.     Defendants' use of the infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

90.     Defendants' acts entitle Plaintiffs to damages for all of the Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

91.     Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct.  Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by the Defendants' actions.

## FIFTH CLAIM FOR RELIEF

**(Injury to Business Reputation – NY General Business Law § 360-1)**

92.     Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 91 hereof.

93.     Due to Plaintiffs' extensive sales, and significant advertising and promotional activities, the Ray-Ban Marks and Oakley Marks have achieved

widespread acceptance and recognition among the consuming public and the trade throughout the United States and abroad.

94.    Plaintiffs' arbitrary and distinctive Ray-Ban Marks and Oakley Marks identify Plaintiffs as the source/origin of the goods on which the Ray-Ban Marks and Oakley Marks appear.

95.    Defendants' conduct has caused and will continue to cause irreparable injury to Plaintiffs' good will and business reputation, in violation of New York General Business Law § 360-1 (2003).

96.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the Ray-Ban Marks and Oakley Marks, and to recover all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above, in an amount not yet known, and the costs of this action.

## SIXTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement)

97.    Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 96 hereof.

98.    Plaintiffs own and enjoy common law trademark rights to the Ray-Ban Marks and Oakley Marks throughout the United States, including within the state of New York.

99.    Defendants' unlawful acts in appropriating rights in Plaintiffs' common law trademarks were intended to capitalize on Plaintiffs' goodwill for Defendants' own pecuniary gain.  Plaintiffs have expended substantial time, resources and effort to obtain an excellent reputation for their trademarks.  As a result of Plaintiffs' efforts, Defendants are now unjustly enriched and are benefitting from property rights that rightfully belong to Plaintiffs.

100.    Defendants' unauthorized use of the Ray-Ban Marks and Oakley Marks has caused and is likely to cause confusion as to the source of Defendants' products, all to the detriment of Plaintiffs.

101.    Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Plaintiffs.

102.    Plaintiffs have been irreparably harmed and will continue to be irreparably harmed as a result of Defendants' unlawful acts unless Defendants are permanently enjoined from their unlawful conduct.

103.    The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights. Said conduct was despicable and harmful to Plaintiffs and as such supports an

award of exemplary and punitive damages in an amount sufficient to punish and make an example of the Defendants, and to deter Defendants from similar conduct in the future.

104.    Plaintiffs have no adequate remedy at law.

105.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the Ray-Ban Marks and Oakley Marks, and to recover all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain, all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above, in an amount not yet known, and the costs of this action.

## SEVENTH CLAIM FOR RELIEF

**(Misappropriation and Unfair Competition Under New York Common Law)**

106.    Plaintiffs specifically reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 105 hereof.

107.    Defendants' acts constitute misappropriation and infringement of Plaintiffs' property rights, goodwill and reputation and unfair competition under common law of the State of New York.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter judgment in its favor and against Defendants as follows:

31
COMPLAINT FOR DAMAGES

A.      Granting permanent injunctive relief restraining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from:

(1)      Manufacturing, distributing, advertising, offering for sale, and/or selling any products bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of the Ray-Ban Marks and Oakley Marks, or any other marks confusingly similar thereto;

(2)      Using any simulation, reproduction, counterfeit, copy, or colorable imitation of the Ray-Ban Marks and Oakley Marks in connection with the promotion, advertisement, display, sale, offer for sale, manufacture, production, circulation or distribution of counterfeit sun eyewear in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiffs, or to any goods sold, manufactured, sponsored, or approved by, or connected with Plaintiffs;

(3)      Committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Plaintiffs;

(4)     Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of the Ray-Ban Marks and Oakley Marks;

(5)     Destroying, altering, removing, delivering, holding for sale, returning, transferring, hiding, or otherwise moving, storing or disposing in any manner Defendants' counterfeit Ray-Ban and Oakley products, the materials/means to make said counterfeit products, as well as any books or records which may contain any information relating to the importation, manufacture, production, distribution, circulation, sale, marketing, offering for sale, advertisement, promotion, and/or display of counterfeit Ray-Ban and Oakley products;

(6)     Otherwise infringing Plaintiffs' registered and common law family of trademarks;

(7)     Aiding, abetting, contributing to, or otherwise assisting anyone in infringement of the Ray-Ban Marks and Oakley Marks; and

(8)     Effecting assignments or transfers, forming new entities, or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Paragraphs (A)(1) through (A)(7) above.

B.    Ordering Defendants to deliver for destruction all counterfeit Ray-Ban and Oakley products, including sun eyewear and labels, signs, prints, packages, wrappers, receptacles, and advertisements relating thereto in its possession, custody, or control or any simulation, reproduction, counterfeit, copy, or colorable imitations thereof, and all plates, molds, heat transfers, screens, matrices, and other means of making same;

C.    Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

D.    Ordering Defendants to disgorge their profits;

E.    Awarding actual damages suffered by Plaintiffs as a result of Defendants' acts;

F.    Awarding all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117;

G.    Awarding treble damages in the amount of Defendants' profits or Plaintiffs' damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

H.    Awarding Plaintiffs statutory damages pursuant to 15 U.S.C. §1117(c);

34
**COMPLAINT FOR DAMAGES**

I.      Awarding applicable interest, costs, disbursements and attorneys'

fees;

J.      Awarding Plaintiffs punitive damages in connection with their claims

under New York law; and

K.      Awarding Plaintiffs such other and further relief as the Court deems

just and proper.

Dated: July 7, 2016                   Respectfully Submitted,
        Los Angeles, California

                                       */s/ Diana A. Sanders*
                                      _____
                                      Diana A. Sanders (DS 2126)
                                      dsanders@thompsoncoburn.com
                                      THOMPSON COBURN LLP
                                      2029 Century Park East, 19th Floor
                                      Los Angeles, California 90067
                                      Tel: 310.282.2500 / Fax: 310.282.2501
                                      **Attorneys for Plaintiffs**
                                      **Luxottica Group S.p.A. and Oakley, Inc.**

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

Luxottica Group S.p.A. and Oakley, Inc. hereby demand a trial by jury of all

claims in this litigation.


Dated: July 7, 2016                                Respectfully Submitted,
       Los Angeles, California

       */s/ Diana A. Sanders*

       _____
       Diana A. Sanders (DS 2126)
       dsanders@thompsoncoburn.com
       THOMPSON COBURN LLP
       2029 Century Park East, 19th Floor
       Los Angeles, California 90067
       Tel: 310.282.2500 / Fax: 310.282.2501
       ***Attorneys for Plaintiffs***
       ***Luxottica Group S.p.A. and Oakley, Inc.***